UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **MALIBU MEDIA, LLC**, | Case No.: 1:18-cv-00452 |
| Plaintiff, | |
| v. | **DEFENDANT'S MOTION TO QUASH THE SUBPOENA** |
| **JOHN DOE SUBSCRIBER ASSIGNED IP ADDRESS 75.118.218.40**, | |
| Defendant. | |

Defendant, John Doe Subscriber Assigned IP Address 75.118.218.40, moves the Court for an order quashing the subpoena issued to WideOpenWest, Inc. to prevent it from disclosing Defendant's name, address and other identifying information.

Dated: April 23, 2018

By: /s/ Jeffrey Antonelli
Jeffrey Antonelli
Antonelli Law, Ltd.
35 E Wacker Dr., Ste. 1875
Chicago, IL 60601
Attorney for Defendant
John Doe subscriber
assigned IP address
75.118.218.40

1

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **MALIBU MEDIA, LLC**, | Case No.: 1:18-cv-00452 |
| Plaintiff, | |
| v. | DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO QUASH THE SUBPOENA |
| **JOHN DOE SUBSCRIBER ASSIGNED IP ADDRESS 96.95.112.34**, | |
| Defendant. | |

## TABLE OF AUTHORITIES

**Cases**

AF Holdings LLC v. Rogers, No. 3:12-cv-01519 2013 WL 358292 (S.D. Cal. Jan. 29, 2013)…20

Boy Racer, Inc., v. Does 1-60, No. 11-01738 (N.D. Cal. Aug. 19, 2011)…………………………...8

Celestial, Inc. v. Swarm Sharing Hash, 12-136 (C.D. CA Mar. 23, 2012)……………………..12

Digital Sin, Inc. v. Does 1-176, 279 F.R.D. (S.D.N.Y. 2012) ............................... .......... 16, 17, 20

Digital Sins, Inc. v. John Does 1-245, No. 1:l l-cv-08170 2012 WL 1744838 (S.D.N.Y. May 15, 2012) ……………………………………………………………………………………………….17

Elf-Man, LLC v. Cariveau, No. 2:13-00507 (ECF No. 78), 2014 WL 202096 (W.D. Wash. Jan. 17, 2014)............................................................................................................................ 20

Hard Drive Prods., Inc., v. Does 1-130, No. C-11-3826 2011 U.S. Dist. LEXIS 132449 (N.D. Cal. Nov. 16, 2011)……………………………………………………………………………15

Hard Drive Prods., Inc., v. Does 1-188, 809 F. Supp.2d 1150 (N.D. Cal. 2011)… ………8, 15

In re BitTorrent Adult Film Copyright Infringement Cases, No. 12-01147 2012 WL 1570765 (E.D.N.Y. May 1, 2012)……………………………………………………………………20

In re BitTorrent Adult Film Copyright Infringement Cases, 296 F.R.D. 80 (E.D.N.Y. 2012)…16

Malibu Media LLC v. John Doe No. 3:16-cv-442 (S.D. Cal. Jul. 21 2016)……………………10

Malibu Media LLC v. John Doe, 13-cv-00893 (W.D. Mich. October 7, 2013)…………………17

Malibu Media LLC v. John Doe, No. 3:16-1006 (N.D. Cal. Jun. 20, 2016)…………… ……...10

Malibu Media v. Doe, No 3:15-cv-2917 (S.D. Cal. Jul. 21 2016)………………..……………..10

Malibu Media v. Doe, No 3:16-cv-0431 (S.D. Cal. Jul. 21 2016)………………………..……..10

Malibu Media, LLC v. Doe, No. 8:13-cv-00365 2014 WL 7188822 (D. Md. Dec. 16, 2014)….20

Malibu Media, LLC v. Does 1-25, No. 12-362 2012 WL 2367555………………………………7

Malibu Media, LLC v. Does 1-5, No. 1:12-cv-02950 2012 WL 2001968 (S.D.N.Y. June 1, 2012)…………………………  …………………………………………………………………16

Malibu Media, LLC v. John Doe No. 3:15-cv-4441 (N.D. Cal Oct. 28 2016)…………………13

Malibu Media, LLC, v. John Doe subscriber assigned IP address 66.108.67.10, No. 1:15-cv-04369 (S.D.N.Y. July 6, 2015)................................................................................ 17, 20

Malibu Media, LLC, v. John Doe, No. 3:15-02931 (S.D. Cal. March 17, 2016)………………10

Malibu Media, LLC, v. John Does, No. 2:12-01642 (C.D. Cal. Oct. 10, 2012)…………………19

Malibu Media, LLC. v. Doe, No. 1:13-cv-6312 (N.D. Ill. Sept 04, 2013)………………..……..13

Manny Film, LLC, v. John Doe Subscriber Assigned IP Address 66.229.140.101, No. 0:15-cv-60446 (S.D. Fla. April 8, 2015)…………………………………………………………………21

MCGIP v. Does 1-149, No. 11-02331 , 2011 WL 4352110 (N.D. Cal. Sept. 16, 2011)………14

Media Prods., Inc. [DBA Devil's Film v. John Does 1-26,] No. 1:12-cv-03719 (S.D.N.Y. June 18, 2012)……………………………………………………………………………………16

Malibu Media, LLC v. John Doe, No. 16-cv-446. (S.D.Cal. Jul. 21, 2016)……………………10

On the Cheap, LLC, v. Does 1-5011, No. C10-4472, 2011 WL 4018258 (N.D. Cal. Sept. 6, 2011)………………………………………………………………………………………14

Patrick Collins, Inc. v. Does 1-6, No. 1:12-cv-02964 2012 WL 2001957 (S.D.N.Y. June 1, 2012)………………………………………………………………………………………..20

Patrick Collins, Inc. v. John Does 1-37, No. [2:12-cv-01259], 2012 WL 287832 (C.D. Cal. Jul. 11, 2012)……………………………………………………………………………………16

Quad International, Inc.  v. John Doe IP address 98.192.184.147, 12-cv-2050 (E.D. CA Jan. 16, 2013... 4 SEO Pictures, Inc. v. Does 1-20, No. 12-cv-3925, 2012 WL 2034631, at * 1 (S.D.N.Y. June 5, 2012) .. .................................................................................................. 12

Third Degree Films, Inc. v. Does 1-108, No. 11-3007 (ECF No. 31 at 6), 2012 WL 669055, *2 (D. Md. Feb. 28, 2012)……………………………………………………………………7

VPR Internationale v. Does 1-1,017, No. 11-02068 (ECF No. 15 at 2 ), 2011 WL 8179128 (C.D. Ill.

Apr. 29, 2011)………………………………………………………………………………19

Washington v. Thurgood Marshall Acad., 230 F.R.D. 18, 21 (D.D.C. 2005)……………………7

**Federal Rules of Civil Procedure**

Rule 45 ....................................................................................................... 5, 6

**Other Authorities**

H.R. Rep. 98-934 (1984), reprinted in 1984 U.S.C.C.A.N. 4655…………………………………7

Matthew Sag, Copyright Trolling, An Empirical Study, 100 IOWA L. REV. 1105, 1108 (2015)…………………………………………………………………………………………16

Matthew Sag, Defense Against the Dark Arts of Copyright Trolling, IOWA L. REV., forthcoming (2017) …………………….................................................................. 9

## PRELIMINARY STATEMENT

Defendant John Doe subscriber assigned IP address 75.118.218.40, by and through counsel, files this Motion for an Order from the Court Quashing the Plaintiff's Rule 45 subpoena to WideOpenWest, Inc., returnable April 20, 2018 (or April 27, 2018 as advised by by letter from WideOpenWest, Inc.,). The basis of this motion rests mainly upon this Court's lack of jurisdiction. The Defendant/Internet Subscriber lives in Indiana, as evidenced by the WideOpenWest, Inc. letter.

## STATEMENT OF FACTS

On January 21, 2018, the Plaintiff filed a copyright infringement lawsuit against Defendant, John Doe account subscriber for IP address 75.118.218.40 (ECF Doc. 1). Plaintiff claims Defendant illegally downloaded and distributed 33 of the Plaintiff's pornographic movies between May 21, 2015 and September 12, 2017. See Exhibit A attached to the Complaint. (ECF Doc. 1).

This Court granted Plaintiff's motion for leave to serve a third party subpoena onto Defendant's Internet Service Provider ("ISP"), WideOpenWest, Inc. ("WOW") on February 21, 2018. (ECF Doc. 8). Plaintiff seeks to obtain the identity and address of Defendant, who it alleges was the account holder of the IP address alleged by Plaintiff to have participated in downloading its copyrighted movies using BitTorrent. Defendant seeks an Order from the Court

Quashing Plaintiff's Rule 45 subpoena to WOW.

## STATEMENT OF DEFENSE

Malibu Media's subpoena request to WOW, submitted as Exhibit A, requested the name and address for the ISP subscriber for IP address 75.118.218.40 on September 12, 2017 at 15:26:53 UTC. Defendant received notice of the lawsuit and subpoena when WOW sent a letter on March 6, 2017 ("the WOW letter"). A redacted version of the WOW letter, to protect the name and address of the Defendant, has been submitted as Exhibit A.

As Exhibit A shows, the WOW letter was sent to an address in Indiana to the Defendant at its address in zip code 46324. Defendant has confirmed with counsel that it does not have a WOW account registered to a property in Illinois.

Defendant asks this Court to grant this Motion to Quash for the following reason:

1. Jurisdiction in the Northern District of Illinois is improper because the WOW account of Defendant was not set up at a property located in Illinois.

## LEGAL ARGUMENT

Plaintiff's subpoena served on WOW should be quashed where:

(1) Defendant has standing to challenge the subpoena;

(2) The Northern District of Illinois does not have jurisdiction over this matter, as the Defendant resides in Indiana and therefore the allegations of the Complaint occurred in Indiana;

(3) The Complaint does not plead sufficient facts to survive a Fed. R. Civ. Pr. 12(b)(6) motion to dismiss;

6

(4) The Subpoena would subject Defendant to undue burden, annoyance, and/or Embarrassment; and

(5) Plaintiff's subpoena does not identify the alleged infringer.

### 1. Defendant has standing to challenge the subpoena.

A party has standing to challenge a third-party subpoena if the challenging party has a personal or proprietary interest in the information sought. See *Washington v. Thurgood Marshall Acad.,* 230 F.R.D. 18, 21 (D.D.C. 2005). Here, Defendant has a personal and proprietary interest in the personal details sought in the subpoena. Congress recognizes that subscribers have a privacy interest in their personally identifying information retained by internet service providers. See H.R. Rep. 98-934 (1984), *reprinted in* 1984 U.S.C.C.A.N. 4655 at *79 ("The Congress is recognizing a right of privacy in personally identifying information collected and held by a cable company. . .").

In a Southern District of California Malibu Media case, the court found the defendants had standing to object to the subpoena, even where the defendant's privacy interest is "minimal at best." See, e.g., *Malibu Media, LLC v. Does 1-25,* No. 12-362 (ECF No. 27 at 3), 2012 WL 2367555, *2 (S.D. Cal. June 21, 2012). Because Defendant John Doe has at least a minimal privacy interest in the information requested by the subpoena, Defendant has standing to object. *Third Degree Films, Inc. v. Does 1-108,* No. 11-3007 (ECF No. 31 at 6), 2012 WL 669055, *2 (D. Md. Feb. 28, 2012) ("however minimal or 'exceedingly small' the Doe Defendants' interests here are, parties need only have some personal right or privilege in the information sought to have standing to challenge a subpoena to a third party").

Additionally, courts in other jurisdictions previously found that the account subscribers of an IP address may challenge subpoenas issued to their internet service providers in similar BitTorrent copyright infringement cases. *See, e.g., Hard Drive Prods., Inc., v. Does 1-188,* 809 F. Supp.2d 1150 (N.D. Cal. 2011) (order granting Doe's motion to quash); *Boy Racer, Inc., v. Does 1-60,* No. 11-01738 (ECF No. 24) (N.D. Cal. Aug. 19, 2011) (order granting Doe's motion to quash and dismiss Case without prejudice).

### 2.    <u>The Northern District of Illinois does not have jurisdiction over this matter.</u>

Jurisdiction in this court is improper. Proper jurisdiction in Federal Copyright cases, such as the one at hand, is "in the district in which the defendant or his agent resides or may be found." 28 USC 1400(a).

First, the instant case has been filed in the Northern District of Illinois; however, Defendant does not subscribe to a WOW account that is located in this district. The account in question was located in another state entirely, Indiana.

Second, because of the unacceptably high risk of "false positives" relative to identifying alleged infringers based on IP addresses, and recognized by Judge Sarah Ellis of this Court, the failure of plaintiff to sufficiently address the problem of a false positive in this case makes clear that it has not established the jurisdiction of this Court. The risk of a false positive, i.e. that the Internet subscriber identified by Plaintiff is not the actual wrongdoer, is one that many jurists find is a bar to establishing jurisdiction. "**This Court agrees with those courts that have found that the plaintiff needs to allege more than just the registration of an IP address to an individual in order to proceed against that individual for copyright infringement.**" *PTG NEVADA, LLC, Plaintiff, v. WAI CHAN, STEPHANI FEDOROVICH, and MICHAEL*

*AFFRUNTI, Defendants., 16-cv-1621* ECF Doc. 75 (NDIL); and generally "*Copyright False Positives*" by Ben Depoorter, University of California, Hastings, Professor of Law & Roger E. Traynor Research Chair & Stanford Center for Internet & Society, Affiliate Scholar, and Robert Kirk Walker, Research Fellow, Technology and Privacy Project, U.C. Hastings, found at http://repository.uchastings.edu/faculty_scholarship/1013, last accessed on January 12, 2018.

Questions exist as to how accurately Malibu Media can identify IP addresses allegedly involved in downloading their copyrighted works using BitTorrent. In this case, Malibu Media claims that based on experience, their tracking methods is "99.99% chance of proper personal jurisdiction and venue" (Field Decl. ¶ 15. ECF Doc 6-1). However, Plaintiff's claims are disproven by the fact that **Defendant does not have a WOW account in Illinois.**

This is not the first time questions have been raised regarding the accuracy of Plaintiff's geolocation arguments. As Loyola Law Professor Matthew Sag explains:

> "Requiring more than a simple assertion that geolocation technology was used is appropriate in our view because geolocation technology is not always reliable. For example, some geolocation trackers will assign an IP address to a random geographic location within a country if it cannot identify a more specific location. In addition, IP addresses are commonly spoofed or hacked..." Matthew Sag, *Defense Against the Dark Arts of Copyright Trolling*, IOWA L. REV., forthcoming (2017) at *17 *available at* https://papers.ssrn.com/sol3/papers.cfm?abstract_id=2933200.

Many California judges have denied Malibu Media's requests to serve early discovery based on concerns with the accuracy of Plaintiff's geolocation methods. In many of these cases, Plaintiff failed to produce evidence sufficient to justify granting its request to take early discovery. Rather than provide evidence to satisfy judicial scrutiny, Plaintiff repeatedly choose to walk away

from the case. *See, e.g. Malibu Media, LLC v. John Doe*, No. 16-cv-446. (ECF No. 8-2; No. 10). (S.D.Cal. Jul. 21, 2016); *Malibu Media LLC v. John Doe No. 3:16-cv-442* (ECF No. 11) (S.D. Cal. Jul. 21 2016); *Malibu Media v. Doe*, No 3:15-cv-2917 (ECF No. 13) (S.D. Cal. Jul. 21 2016), and *Malibu Media v. Doe*, No 3:16-cv-0431 (ECF No. 11) (S.D. Cal. Jul 21 2016); *Malibu Media, LLC, v. John Doe*, No. 3:15-02931 (ECF No. 6 pg. 4-5) (S.D. Cal. March 17, 2016).

Of note, in the Northern District of California, after the Plaintiff's attorney failed to appear at the Motion to Quash hearing, Judge Alsup determined that Malibu Media failed to support its request to file a third-party subpoena with "sworn evidence of such a critical fact as the means for determining the location of the accused infringer," which would serve:

> "not only to protect the subscriber from the threat of litigation in an improper venue, but also to ensure that the relief sought does not require the Court to exercise authority outside of its jurisdiction. These protections would come at negligible burden to Malibu Media, which is presumably knowledgeable of its own methodology for identifying the location of the IP address identified in its complaint." *Malibu Media LLC v. John Doe*, No. 3:16-1006 (ECF No. 13 at 5) (N.D. Cal. Jun. 20, 2016).

As a result of Plaintiff's failure to supply supporting evidence, Judge Alsup held that Malibu Media's "failure to include a sworn record on the reliability of its IP address geolocation methodology is fatal and constitutes cause to quash" the requested ISP subpoena. Id at 6.

Plaintiff's attorney has submitted declarations that fail to state anything other than conclusions. Id. at CM/ECF No. 6-2 and 6-3. These declarations lack specificity as to what was checked and how. The declaration also fails to show **any** evidence of confirming whether

the IP address traces back to the district. Plaintiff does not state whether the IP address traced to this district at any time during the period of alleged infringement, and Defendant has supplied evidence that its WOW account was located in a different jurisdiction altogether. Plaintiff's history of dismissing cases when the geolocation software is challenged by judges raises questions regarding Plaintiff's ability to provide concrete evidence that jurisdiction is proper in any of its cases.

Without any concrete supporting evidence, the Plaintiff cannot demonstrate that its geolocation techniques are reliable or that venue is proper. Since the discovery sought will not identify the infringer and the Plaintiff has included no evidence demonstrating that venue is proper, the Defendant respectfully requests this Court deny Plaintiff's subpoena request. In the alternative, the Defendant respectfully requests this Court either order an evidentiary hearing on the matter so the Court may examine evidence and hear witness testimony on the accuracy of Plaintiff's IP address tracking methods, or order Plaintiff to submit additional, hard evidence proving its claims, countering Defendant's evidence.

Since the Plaintiff failed to supply any evidence demonstrating the accuracy of its geolocation tracking software, it has failed to establish a prima facie case of valid jurisdiction over the Defendant. Without demonstrating proper venue and jurisdiction over the Defendant in this case, and in light of the evidence presented by Defendant, this Motion to Quash should be granted.

### 3. **The Complaint does not plead sufficient facts to survive a Fed. R. Civ. Pr. 12(b)(6) motion to dismiss**

Granting this Motion to Quash is appropriate because Plaintiff's Complaint would not withstand a motion to dismiss. *See, e.g. Quad International, Inc. v. John Doe IP address 98.192.184.147*, 12-cv-2050 at 6 (E.D. CA Jan. 16, 2013); *Celestial, Inc. v. Swarm Sharing Hash*, 12-136 at 3-4 (C.D. CA Mar. 23, 2012) *quoting SBO Pictures*, 2011 WL 6002620 at *2.

In order to withstand a motion to dismiss, Plaintiff must show that it has ownership of a valid copyright and that the defendant violated the copyright owner's exclusive rights under the copyright act. *Quad*, *supra*, at 6. Defendant contends that Plaintiff has not given significant evidence to show that any of its copyrighted materials were violated.

In its efforts to establish violation of rights, Plaintiff submits a declaration of Tobias Fieser, stating that "multiple bits were conveyed over this connection." (ECF No. 7-3 ¶12). However, multiple "bits" of data do not translate to a viewable image close enough to approximate being substantially similar to Malibu's copyrighted work. As Professor Sag states:

> "the isolated "bits" of the movie that [Plaintiff] supposedly received from the defendant's IP address do not meet the standard for copyright infringement. In the cases that we have studied, the plaintiffs have offered declarations that defendant's IP address was observed transmitting data with a certain hash value. That hash value, it is alleged, is the same as the hash value of a piece that the witness combined with other pieces to create a file identical to the copyright owner's work… note that these declarations say nothing about the size or contents of the portions of the work actually downloaded from the defendant's IP address. In essence, the plaintiff can only state truthfully that its software observed the defendant's IP address transmitting a fraction of the work.
> F.N. 290:"There is nothing in either declaration that would allow the court to conclude that the "bits" and "pieces" captured by [plaintiff's experts'] technology as allegedly distributed from Doe's IP address meet the standard

12

of originality justifying a finding that they are protectable elements of the works. Even if the hash value captured in the PCAP corresponds to portion of a digital file that is "identical, strikingly similar or substantially similar to" [plaintiff's] copyrighted work, there is nothing before the court that describes the audio/visual material that is represented by that hash value. Is it the entire movie or is it some portion so small that it would not be identifiable as part of the movie? There is nothing in this record to answer that question." "Dark Arts," at *52; *quoting Malibu Media, LLC. v. Doe,* No. 1:13-cv-6312, slip op. at 13 n5 (N.D. Ill. Sept 04, 2013), ECF No. 180.

Because Plaintiff has failed to provide any evidence, much less a simple declaratory statement, as to the side or specific content of these "bits," Plaintiff's complaint could not withstand a motion to dismiss. As a result, this Court should grant Defendant's Motion to Quash.

### 4. Plaintiff fails to establish that Defendant was owner of the IP address during the period of alleged downloading

In addition to its failure to demonstrate the accuracy of its geolocation software, Plaintiff has failed to show that the IP address in question remained static for the eight-month period of alleged infringements. Plaintiff's subpoena, Exhibit A to this Motion, only requests the identity of the subscriber for IP address 75.118.218.40 on September 12, 2017, and does not request the identity of the subscriber for any of the other dates of alleged infringement which occurred over a period of time from May 2015 to September 2017, a period of time of more than two years or 28 months.

The likelihood of an individual's IP address being dynamic (i.e., changing) over time has been acknowledged by Judge Alsup of the Northern District of California. Judge Alsup expressed the concern of dealing with dynamic IP addresses: "the IP address identified in [a] complaint might have been assigned to multiple individuals over time." *Malibu Media,*

13

*LLC v. John Doe* No. 3:15-cv-4441 (ECF No. 73) (N.D. Cal Oct. 28 2016).

If the Court is not inclined to grant the motion to quash the ISP subpoena on the basis of jurisdiction alone (the Defendant resides in Indiana, not Illinois), Defendant requests the Court enter a Stay as to the subpoena until plaintiff evidence that the IP address in question belonged to the same WOW accountholder (i.e. Defendant) for the twenty-eight month period of alleged infringements, or allow for discovery to be taken from WOW to answer this question.

5.  **The Subpoena Would Subject Defendant to Undue burden, Annoyance and/or Embarrassment**

A party may also object under FED. R. CIV. P. 26 and/or 45 to a subpoena if the subpoena would subject them to undue burden, annoyance and/or embarrassment. Defendant asserts Plaintiff wishes to obtain Defendant's identity to force a settlement rather than face the alternative of litigating an expensive lawsuit involving pornography. This assertion is supported by findings in similar cases in the Northern District of California. As one court explained:

> "once the plaintiff obtains the identities of the IP subscribers through early discovery, it serves the subscribers with a settlement demand . . . the subscribers, often embarrassed about the prospect of being named in a suit involving pornographic movies, settle . . . .Thus, these mass copyright infringement cases have emerged as a strong tool for leveraging settlements – a tool whose efficiency is largely derived from the plaintiffs' success in avoiding the filing fees for multiple suits and gaining early access en masse to the identities of alleged infringers." *MCGIP v. Does 1- 149*, No. 11-02331 (ECF No. 14 at note 5), 2011 WL 4352110, at *4 (N.D. Cal. Sept. 16, 2011).

*See also On the Cheap, LLC, v. Does 1-5011*, No. C10-4472 (ECF No. 66 at 11), 2011 WL 4018258 at *11 (N.D. Cal. Sept. 6, 2011) (The court stated that plaintiff's settlement tactics leave defendants with "a decision to either accept plaintiff's demand or incur significant

expense to defend themselves" and found that this does not "comport with the 'principles of fundamental fairness'").

Another court in the Northern District of California recognized that plaintiffs like Malibu Media

> "would likely send settlement demands to the individuals whom the ISP identified as the IP subscriber. 'That individual – whether guilty of copyright infringement or not – would then have to decide whether to pay money to retain legal assistance to fight the claim that he or she illegally downloaded sexually explicit materials, or pay the settlement demand. This creates great potential for a coercive and unjust settlement.'" *SBO Pictures, Inc., v. Does 1-3,036*, No. 11-4220 (ECF No. 14 at 8), 2011 WL 6002620, at *8 (N.D. Cal. Nov. 30, 2011) (quoting *Hard Drive Prods., Inc., v. Does 1-130*, No. C-11-3826 (ECF No. 16), 2011 U.S. Dist. LEXIS 132449 at *9 (N.D. Cal. Nov. 16, 2011).

As another California court noted,

> "The Court has previously expressed concern that in pornographic copyright infringement lawsuits like these, the economics of the situation makes it highly likely for the accused to immediately pay a settlement demand. Even for the innocent, a four-digit settlement makes economic sense over fighting the lawsuit in court – not to mention the benefits of preventing public disclosure (by being named in a lawsuit) of allegedly downloading pornographic videos." *Ingenuity 13 LLC. v. John Doe*, No. 12-8333 (ECF No. 48 at 7) (C.D. Cal. Feb. 7, 2013).

In a similar case, the judge believed the purpose of these types of lawsuits was to create settlements, not litigation, stating:

> "the court will not assist a plaintiff who seems to have no desire to actually litigate but instead seems to be using the courts to pursue an extrajudicial business plan against possible infringers (and innocent others caught up in the ISP net)." *Hard Drive Prods., Inc. v. Does 1-90*, No. 11-03825 (ECF No. 18 at 11), 2012 WL
> 1094653, at *7 (N.D. Cal. Mar. 30, 2012).

Defendant believes the recent decision by the Honorable Judge Alvin Hellerstein in the Southern District of New York to be instructive on the issue at hand. Judge Hellerstein recently

denied Malibu Media's request to send a subpoena to the internet service provider, stating:

"Recent empirical studies show that the field of copyright litigation is increasingly being overtaken by "copyright trolls," roughly defined as plaintiffs who are "more focused on the business of litigation than on selling a product or service or licensing their [copyrights] to third parties to sell a product or service." Matthew Sag, *Copyright Trolling, An Empirical Study,* 100 IOWA L. REV. 1105, 1108 (2015). "The paradigmatic troll plays a numbers game in which it targets hundreds or thousands of defendants, seeking quick settlements priced just low enough that it is less expensive for the defendant to pay the troll rather than defend the claim." *Id.* The lawsuits most frequently target anonymous John Does for alleged infringement related to the use of BitTorrent. Indeed, of "the 3,817copyright law suits filed in 2013, over 43% were against John Does and more than three-quarters of those related to pornography." *Id.* at 1108-09. But almost none ever reaches a hearing. Rather, the "lawsuits are filed to take advantage of court ordered discovery [under Fed. R. Civ. P. 26(d)] to break the veil of anonymity that separates IP addresses from the account information of actual human beings." *Id.* at 1109; *see also Digital Sin, Inc. v. Does 1-176,* 279 F.R.D. 239, 241 (S.D.N.Y. 2012). They then use this information to quickly negotiate settlements on mass scale without any intention of taking the case to trial. *See, e.g., Media Prods., Inc., DBA Devil's Film v. John Does 1-26,* No. 12-cv-3719, at 4 (S.D.N.Y. June 18, 2012) (explaining that the settlements in these BitTorrent cases are "are for notoriously low amounts relative to the possible statutory damages, but high relative to the low value of the work and minimal costs of mass litigation. Cases are almost never prosecuted beyond sending demand letters and threatening phone calls.").

"In 2012, judges in the Southern District and across the country began awakening to the danger of copyright trolls, especially in the context of pornography. For example, the late Judge Harold Baer, Jr. explained that "[i]n such cases, there is a risk not only of public embarrassment for the misidentified defendant, but also that the innocent defendant may be coerced into an unjust settlement with the plaintiff to prevent the dissemination of publicity surrounding unfounded allegations." *Media Prods., Inc.* [*DBA Devil's Film v. John Does 1-26,]* No. 1:12-cv-03719 (ECF No. 5 at 4) (S.D.N.Y. June 18, 2012) (Baer, J.). The largest copyright trolls were increasingly unscrupulous in abusing the litigation process to exploit this dynamic. *See In re BitTorrent Adult Film Copyright Infringement Cases,* 296 F.R.D. 80, 89 (E.D.N.Y. 2012). ("The most persuasive argument against permitting plaintiffs to proceed with early discovery arises from the clear indicia, both in this case and in related matters, that plaintiffs have employed abusive litigations tactics to extract settlements from John Doe defendants."); *Patrick Collins, Inc. v. John Does 1-37,* No. [2:12-cv-01259], 2012 WL 287832, at *3 n. 2 (C.D. Cal. Jul. 11, 2012) ("the federal courts are not flexible enough to be shaped into 'cogs in a plaintiffs copyright-enforcement business model. The Court will not idly watch what is essentially an extortion scheme,

16

for a case that [Plaintiffs have] no intention of bringing to trial.' "); *Malibu Media, LLC v. Does 1-5,* No. 1:12-cv- 02950 (ECF No. 7), 2012 WL 2001968, at * 1 (S.D.N.Y. June 1, 2012) (Oetkin, J.) ("This Court shares the growing concern about unscrupulous tactics used by certain plaintiffs, especially in the adult films industry, to shake down the owners of specific IP addresses from which copyrighted adult films were allegedly downloaded."); *Digital Sins, Inc. v. John Does 1-245,* No. 1:l l-cv-08170 (ECF No. 18), 2012 WL 1744838, at *3 (S.D.N.Y. May 15, 2012) (McMahon, J.) ("In these BitTorrent cases, numerous courts have already chronicled abusive litigation practices ..."); *SEO Pictures, Inc. v. Does 1-20,* No. 12-cv-3925, 2012 WL 2034631, at * 1 (S.D.N.Y. June 5, 2012) ("Finally, early discovery has been used repeatedly in cases such as this one to harass and demand of defendants quick settlement payments, regardless of their liability."); *Digital Sin, Inc. v. Does 1-176,* 279 F.R.D. 239, 242 (S.D.N.Y. 2012) ("This course of conduct indicates that the plaintiffs have used the offices of the Court as an inexpensive means to gain the Doe defendants' personal information and coerce payment from them. The Plaintiffs seemingly have no interest in actually litigating the cases, but rather simply have used the Court and its subpoena powers to obtain sufficient information to shake down the John Does.")." *Malibu Media, LLC, v. John Doe subscriber assigned IP address 66.108.67.10,* No. 1:15-cv-04369 (ECF No. 10 at 5-6) (S.D.N.Y. July 6, 2015) (Hellerstein, J.) (footnote omitted).

Defendant has additional concerns about how Malibu Media will use the personal information it receives from the internet service provider. Malibu Media's co-owner Colette Pelissier claims the company does "not seek to use the Court system to profit from infringement" or supplement company income. (Field Decl. ¶ 25. ECF Doc 7 -1). However, this claim is contradicted by correspondence filed in a Michigan Malibu Media case in which Malibu Media attorney Paul Nicoletti stated that not only does Malibu Media run an asset search on defendants but it "also looks at Defendant's earning power over a 20 year period." See *Malibu Media LLC v. John Doe*, 13-cv-00893, Doc. 10-2, (W.D. Mich. October 7, 2013).

This troubling admission supports Defendant's assertion and the findings of multiple judges cited in this motion: that Malibu Media's true goal in obtaining the identity of the subscriber is not to litigate the case on the merits, but rather to extract the maximum settlement

possible from the Defendant. If the true goal were litigation, Malibu Media's efforts at the outset of a case would be targeted at obtaining evidence to prove their claims instead of obtaining asset searches and predicting a defendant's income potential over a twenty-year period.

Based on Malibu Media's past litigation tactics, Defendant's privacy interests are at stake and the Defendant will be subjected to annoyance, harassment, embarrassment, undue burden and expense if this Court does not grant the requested relief or otherwise prohibit the Plaintiff from obtaining Defendant's identity.

6. **Plaintiff's Discovery Request Will Not Identify the Alleged Offender**

Finally, the requested subpoena response will not identify the actual infringer. It will only provide the identity of the person whose name was on the account at the time of the alleged downloads. The actual infringer could be anyone. It is very possible that the infringer was another household member, an employee or customer of the defendant's business, a neighbor, guest or even a stranger who was able to hack into this Defendant's internet access.

In a Central District of California Malibu Media case, the court denied Malibu Media's request to serve a subpoena onto the defendants' internet service providers because Malibu Media failed to demonstrate that the subpoena response would identify the infringer. The judge found:

> [T]he subscriber information is not a reliable indicator of the actual infringer's identity. Due to the proliferation of wireless internet and wireless-mobile computing (laptops, smartphones, and tablet computers), it is commonplace for internet users to share the same internet connection, and thus, share the same IP address. Family members, roommates, employees, or guests may all share a single IP address and connect to BitTorrent. If the subscriber has an unsecured network, it is possible that the actual infringer could be a complete stranger standing outside the subscriber's home, using the internet service and who's internet activity is being attributed to the unknowing subscriber's IP address. Thus, obtaining the subscriber information will only lead to the person paying for the internet service and not necessarily the actual

infringer.

It is even more unlikely that early discovery will lead to the identities of Defendants given how commonplace internet usage outside one's home has become. An increasing number of entities offer publicly-accessible internet service; consider coffee shops, workplaces, schools, and even cities. Mobile-computing allows internet users and copyright infringers, to connect to the internet in any such location. A given entity may have hundreds or thousands of users in a one to two-month period. Obtaining the subscriber information in these cases will only lead to name of the entity and is unlikely to yield any identifying information about the actual infringer. Accordingly, granting early discovery for the subscriber information is not very likely to reveal the identities of Defendants. *Malibu Media, LLC, v. John Does,* No. 2:12-01642 (ECF No. 32 at 4-5) (C.D. Cal. Oct. 10, 2012) (internal citations omitted).

Malibu Media could not demonstrate that the subpoena response would identity the infringer in the above referenced case, and it cannot demonstrate that the subpoena response would identify the infringer in the case at hand. Identifying the individual who pays the internet bill associated with a particular account does not identify the individual who may have infringed a copyright via that IP address. As the court in *SBO Pictures* understood, "the ISP subscriber to whom a certain IP address was assigned may not be the same person who used the internet connection for illicit purposes." *SBO Pictures, Inc.,* *supra*, 2011 WL 6002620, at *3. *See also VPR Internationale v. Does 1-1,017,* No. 11-02068 (ECF No. 15 at 2 ), 2011 WL 8179128 (C.D. Ill. Apr. 29, 2011) ("Where an IP address might actually identify an individual subscriber and address the correlation is still far from perfect . . . . The infringer might be the subscriber, someone in the subscriber's household, a visitor with her laptop, a neighbor, or someone parked on the street at any given moment.")

Other court decisions cited by Judge Hellerstein in the July 6, 2015, Southern District of New York decision noted the lack of connection between a mere IP address and the actor:

19

"The fact that a copyrighted work was illegally downloaded from a certain IP address does not necessarily mean that the owner of that IP address was the infringer. Indeed, the true infringer could just as easily be a third party who had access to the internet connection, such as a son or daughter, houseguest, neighbor, or customer of a business offering internet connection." *Patrick Collins, Inc. v. Does 1-6*, No. 1:12-cv-02964 (ECF No. 7), 2012 WL 2001957, at *1 (S.D.N.Y. June 1, 2012) (internal citations omitted); *see also In re BitTorrent Adult Film Copyright Infringement Cases*, No. 12-01147 (ECF No. 4), 2012 WL 1570765 (E.D.N.Y. May 1, 2012) ("[T]he assumption that the person who pays for Internet access at a given location is the same individual who allegedly downloaded a single sexually explicit film is tenuous, and one that has grown more so over time."); *Digital Sin, Inc. v. John Does 1-176*, 279 F.R.D. 239, 242 (S.D.N.Y. 2012) (finding that approximately **30% of John Does identified by their internet service providers are not the individuals who actually downloaded the allegedly infringing films**). The risk of misidentification is great in a world with ubiquitous Wi-Fi, and given courts' concerns that these sorts of allegations - especially by this plaintiff - are likely to coerce even innocent defendants into settling, the risk of misidentification is important to protect against. *Malibu Media, LLC, v. John Doe subscriber assigned IP address 66.108.67.10,* No. 1:15-cv-04369 (ECF No. 10 at 9-10) (S.D.N.Y. July 6, 2015) (emphasis added) (Hellerstein, J.).

As these types of cases are common nationwide, other courts have concluded as well that an IP address "may not be a sufficient basis on which a plausible claim can lie against a subscriber." *Malibu Media, LLC v. Doe,* No. 8:13-cv-00365 (ECF No. 60 at 7), 2014 WL 7188822, at *4 (D. Md. Dec. 16, 2014).

In the Southern District of California, the Honorable Judge Barry Moskowitz expressed the concern that,

"[d]ue to the risk of 'false positives,' an allegation that an IP address is registered to an individual is not sufficient in and of itself to support a claim that the individual the touchstone of *Iqbal* and *Twombly*." *AF Holdings LLC v. Rogers,* No. 3:12-cv- 01519 (ECF No. 14), 2013 WL 358292, at *3 (S.D. Cal. Jan. 29, 2013)

In the Western District of Washington, the Honorable Judge Robert Lasnik acknowledged:

"While it is possible that one or more of the named defendants was personally involved in the download, it is also possible that they simply failed to secure their connection against third-party interlopers." *Elf-Man, LLC v. Cariveau,* No.

2:13- 00507 (ECF No. 78), 2014 WL 202096, at *2 (W.D. Wash. Jan. 17, 2014).
Finally, in the Southern District of Florida, the Honorable Judge Ursula Ungaro stated:

> "there is nothing linking the IP address location to the identity of the person actually downloading and viewing the copyrighted material and nothing establishing that the person actually lives in this district. Even if this IP address is located within a residence, geolocation software cannot identify who have access to that residence's computer and who would actually be using it to infringe Plaintiff's copyright" *Manny Film, LLC, v. John Doe Subscriber Assigned IP Address 66.229.140.101,* No. 0:15-cv-60446 (ECF No. 10) (S.D. Fla. April 8, 2015).

Because Plaintiff's discovery request will not identify the alleged offender, Defendant asks this Court to quash Plaintiff's subpoena.

## CONCLUSION

Based on the aforementioned court decisions, Defendant respectfully requests that the Court vacate its prior Order granting Plaintiff permission to serve a subpoena on WOW and enter an Order quashing the subpoena issued to WOW to prevent it from disclosing Defendant's name, address and other identifying information. In the alternative, the Defendant respectfully requests the Court stay the subpoena and set an evidentiary hearing to hear testimony regarding the accuracy and validity of the geolocation technology utilized by Malibu Media to identify alleged infringers, and requests that this Court issue a protective order to prevent Defendant's identity from becoming part of the public court docket.

Dated: April 23, 2018

By: /s/ Jeffrey Antonelli
Jeffrey Antonelli
Antonelli Law, Ltd.
35 E Wacker Dr., Ste. 1875
Chicago, IL 60601
Attorneys for Defendant
John Doe subscriber
assigned IP address
75.118.218.40

21

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **MALIBU MEDIA, LLC**, | Case No.: 1:18-cv-00452 |
| Plaintiff, | |
| v. | [Title]    **Certificate of Service** |
| **JOHN DOE SUBSCRIBER ASSIGNED IP ADDRESS 96.95.112.34**, | |
| Defendant. | |

1.    I, Jeffrey Antonelli, counsel for defendant John Doe subscriber assigned IP address 75.118.218.40, hereby certify that on April 23, 2018, I electronically filed this Defendant's Motion to Quash Subpoena pursuant to Rules 45, 5.2(e) and/or 26(c) of the Federal Rules of Civil Procedure with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to the following:

> Mary K. Schulz, Esq.
> Media Litigation Firm, PC
> 1144 E State Street
> Suite A260
> Geneva, IL 60134

2.    On April 23, 2018, I will also cause to be sent a courtesy copy of all moving papers to the Hon. Charles P. Kocoras, U.S.D.J., United States District Court, Room 2325, 219 South Dearborn Street, Chicago, IL 60604, via hand delivery.

3.    On April 23, 2018, I also caused to be sent a copy of all moving papers via facsimile to the following:

> WideOpenWest, Inc.
> Legal Compliance

1323 Bond St. Ste. 163
Naperville, IL 60563
Fax: 630-536-3108

I certify under penalty of perjury under the laws of the United States of America that the

foregoing  is true and correct.

By:     /s/ Jeffrey Antonelli

Dated:  April 23, 2018                                  Jeffrey Antonelli
Antonelli Law, Ltd.
35 E Wacker Dr., Ste. 1875
Chicago, IL 60601
Attorney for Defendant
John Doe  subscriber
assigned IP address
75.118.218.40
